# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SCOTT WOOD AND CARLEY WOOD, § § *Plaintiffs,* § § v. § § NATIVE SURF, LLC, d/b/a INFINITY § ROOFING SOLUTIONS, and EDWARD § WOLFF & ASSOCIATES, § § *Defendants.* § | Civil Action No. 4:22-cv-143 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Scott Wood and Carley Wood's Motion for Partial Summary Judgment as to Claims Against Edward Wolff & Associates (Dkt. #28). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED**.

## BACKGROUND

This case arises out of a series of collection attempts on a purported debt following the completion of a bathroom remodeling project. In 2021, Plaintiffs Scott and Carley Wood (the "Woods"), a married couple, decided to update their home, so they began searching for a contractor to remodel their bathroom. According to their affidavits, the Woods hired Defendant Native Surf, LLC, doing business as Infinity Roofing Solutions, ("Native Surf") to remodel their bathroom for the agreed upon price of $44,000. The parties orally agreed on this price, deciding to opt for a "gentleman's agreement" instead of a written contract (Dkt. #28, Exhibit 1 at p. 1).

The Woods allege that they made incremental payments of $5,000 throughout the completion of the project. After Native Surf completed the project on January 7, 2022, the Woods made a final payment bringing the total payments to $44,000—the originally agreed upon price.

Native Surf then claimed that the Woods owed more money. First, Native Surf claimed that the Woods owed an additional $3,000. Two months later, Native Surf demanded at least $7,000 more than the agreed upon price. A few days later, that demand escalated to at least $12,000. The Woods refused to pay these additional amounts.

On February 11, 2022, the Woods received a call from someone purporting to be Joseph Carter on behalf of Defendant Edward Wolff & Associates ("EWA"), a debt collector. On the call, Mr. Carter claimed to represent the legal interests of Native Surf and indicated that the Woods owed Native Surf $15,000. On February 14, 2022, a few days later, Scott Wood called Mr. Carter back and asked him to provide proof of the purported debt. Raising his voice, Mr. Carter said, "You know there is no contract you mother [expletive]! You are going to pay my client the money he is owed!" (Dkt. #28, Exhibit 1 at p. 2). Shocked by the outburst, Scott Wood hung up the phone without further discussion.

In the days that followed, the Woods allege that they began receiving a daily barrage of phone calls from Mr. Carter. Mr. Carter called the Woods repeatedly. He called the Woods multiple times per day, one call after another. But the Woods refused to answer. Mr. Carter then sent the Woods text messages threatening to notify members of their family about the purported debt. In one instance, Mr. Carter called Carley Wood's former sister-in-law, Audra Wood.

According to Carley Wood, Mr. Carter left Carley Wood a voicemail stating that he was going to show up at the Woods' house, while their children were home, to conduct an "asset liability investigation" (Dkt. #28, Exhibit 3 at p. 2). Mr. Carter said that he would enter the home without permission to "inspect and catalog" all the Woods' possessions to pay for the purported debt (Dkt. #28, Exhibit 3 at p. 2). Carley Wood also received another voicemail purportedly from

a "Roy Newman." Mr. Newman stated that he and his men would arrive to conduct the asset liability investigation on February 23, 2022 (Dkt. #28, Exhibit 3 at p. 2). Mr. Newman, who sounded like Mr. Carter but with an exaggerated southern accent, said that he would not show up if Scott Wood paid Native Surf. Despite Mr. Newman's representations, no one ever came to the Woods' home.

On February 18, 2022, Scott Wood claims that he received a phone call for which the caller ID indicated was from his wife. After he answered, Scott Wood heard a man who sounded like Mr. Carter yelling, "Where are you at you mother [expletive]? I am coming after you!" Scott Wood immediately hung up and called Carley Wood's phone number. She did not answer. In a panic and believing that his family was in danger, Scott Wood rushed home to find Carley Wood unharmed and confused as to why he was home early from work. Scott Wood checked Carley Wood's phone and saw that she had a missed call from him but no outgoing call. The Woods concluded that Mr. Carter must have "spoofed" Carley Wood's phone number to disguise his own phone number when calling Scott Wood. Scott Wood further claims that he received threatening text messages from a purported "Mr. Knight" with EWA, but he believes that these messages really came from Mr. Carter.

The Woods claim that they never received any proof or written notification of the debt that was purportedly owed—despite Scott Wood initially asking Mr. Carter for such information (*see* Dkt. #28 at p. 5; Dkt. #28, Exhibit 1 at p. 3).

On February 28, 2022, the Woods sued both Native Surf and EWA for various causes of action arising out of the alleged debt collection attempts (Dkt. #1). The Woods specifically asserted claims against EWA for unreasonable collection efforts, for violations of the Fair Debt Collection

Practices Act ("FDCPA"), and for violations of the Texas Debt Collection Act ("TDCA") (Dkt. #1 at pp. 13–16). On May 17, 2023, the Court entered a default judgment declaring that the Woods did not owe Native Surf any money under the remodeling contract the parties entered (Dkt. #27 at p. 11). On May 31, 2023, the Woods filed the pending motion for partial summary judgment on the claims against EWA. EWA did not file a response.[1]

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential

---

[1] EWA, whose prior counsel withdrew on December 8, 2022, is currently pro se. In its order granting EWA's counsel's motion to withdraw, the Court reminded EWA that a corporation cannot appear in federal court unless represented by a licensed attorney (Dkt. #18 at p. 1) (citing *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004)).

elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. In so doing, the nonmovant "cannot rely on the facts in its unverified complaint," but "point to evidence in the record sufficient to establish the alleged facts[.]" *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991). Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted). A court cannot grant a motion for summary judgment "solely on the ground that [the nonmovant] failed to respond[.]" *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709–10 (5th Cir. 1985). However, a court may "accept[] as undisputed the facts . . . listed in support of [a movant's] motion for summary judgment" where it is unopposed. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1991). A court may then grant such a motion where the movant makes a "prima facie showing of [movant's] entitlement to judgment." *Id*.

## ANALYSIS

The Woods contend that they are entitled to judgment as a matter of law on their claims against EWA for unreasonable collection efforts and for violating the FDCPA and the TDCA

5

because they have proved all essential elements of their claims and there are no genuine issues of material fact (Dkt. #28 at pp. 1, 6–7, 14–15). EWA has not responded to the motion, so the Court accepts the facts listed in support of the motion as undisputed. *See Eversley*, 843 F.2d at 174.

## I.   Violations of the FDCPA

To establish a claim under the FDCPA, the Woods must show that (1) they were the object of collection activity arising from a consumer debt; (2) EWA is a debt collector defined by the FDCPA; and (3) EWA has engaged in an act or omission prohibited by the FDCPA. *See Spencer v. Experian Info. Sols., Inc.*, No. 4:21-CV-00393, 2022 WL 1271128, at *5 (E.D. Tex. Apr. 28, 2022). A single violation is sufficient to establish civil liability. *United States v. Commer. Recovery Sys.*, 179 F. Supp. 3d 728, 733 (E.D. Tex. 2016) (Mazzant, J.). Here, the summary judgment evidence establishes that there is no genuine issue of material fact as to these essential elements.

The evidence establishes that the Woods were the object of collection activity arising from a consumer debt. The FDCPA defines "Debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). The Woods' purported debt arose under their bathroom remodeling contract, a highly personal and household-based transaction. EWA attempted to collect the debt by subjecting the Woods to numerous phone calls, voicemails, and text-messages. These actions constituted collection activities. *See In re Neria*, No. AP 16-03148, 2022 WL 17254478, at *21 (Bankr. N.D. Tex. Nov. 28, 2022) ("An array of actions can be considered collection activities. A common example is a letter that states a consumer 'must pay, a date by when he must pay, to whom

6

he must pay his debt, the consequences of not paying, or any other information associated with a communication intended to collect a debt.'") (citation omitted). The fact that the Woods have contested the validity of the debt does not affect the Court's analysis. The FDCPA "makes debt collectors liable for various 'abusive, deceptive, and unfair debt collection practices' regardless of whether the debt is valid." *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (quoting 15 U.S.C. § 1692(a)).

Secondly, the evidence shows that EWA is a "debt collector" as defined by the FDCPA. The term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). As referenced in the Woods' motion, EWA's website proclaims that EWA is a "commercial collection agency" that can be used "for faster debt recovery." EDWARD WOLFF & ASSOCIATES, https://www.edwardwolff.biz (last visited Apr. 2, 2024). This undisputed information, combined with Mr. Carter's use of telephonic communications on behalf of EWA in attempt to collect a purported debt, establishes EWA's status as a "debt collector."

Lastly, the evidence shows that EWA, via Mr. Carter, violated many of the FDCPA's prohibitions. The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Debt collectors, in connection with the collection of any debt, may not: (1) communicate with any person other than the consumer without prior consent; (2) engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person; (3) collect any amount unless such amount is expressly

7

authorized by the agreement creating the debt; or (4) threaten to take any nonjudicial action to dispossess or disable property without either a present right to possession of the property claimed as collateral through an enforceable security interest or a present intention to take possession of the property. 15 U.S.C. §§ 1692c(b), 1692d, 1692f(1), 1692f(6). Mr. Carter violated most of these prohibitions. He contacted a relative about the purported debt without the Woods' consent, he abused and harassed the Woods with repeated phone calls and profane language, and he threatened to enter the Woods' home without their consent to "inspect and catalog" their possessions—implying an intent to dispossess the property without a legitimate basis to do so. Such conduct, committed on behalf of EWA, squarely satisfies the third element of the Woods' FDCPA claim.

In addition to these violations, EWA failed to comply with the FDCPA's notice requirements. The FDCPA requires that a debt collector send the consumer a written notice containing: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debt will be assumed valid unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt; (4) a statement that the debt collector will obtain and mail verification of the debt to the consumer if the consumer disputes the debt within thirty days; and (5) a statement that debt collector will provide the consumer with the name and address of the original creditor upon the consumer's request within thirty days. 15 U.S.C. § 1692g. EWA never sent the Woods a written notice containing the above requirements despite the Woods asking EWA for proof of the debt.

The Court finds that partial summary judgment should be granted on the Woods' FDCPA claim as to liability.

## II. Violations of the TDCA

"The elements of a TDCA claim are: (1) the debt is a consumer debt; (2) the defendant is a debt collector, as defined by the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act." *Putty v. Fed. Nat'l Mortg. Ass'n*, No. 3:16-CV-2562-D, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017).

Here, the summary judgment evidence establishes all elements of the Woods' TDCA claim except for injury. "The same actions that are unlawful under the FDCPA are also unlawful under the [TDCPA.]" *Martinez v. Eltman Law, P.C.*, 444 F. Supp. 3d 748, 756 (N.D. Tex. 2020) (quoting *Bullock v. Abbott & Ross Credit Servs., L.L.C.*, 2009 WL 4598330, at *2 n.3 (W.D. Tex. Dec. 3, 2009)). Unlike an FDCPA claim, however, a TDCA claim requires proof of an actual injury to establish liability.[2] *See Williams v. Lakeview Loan Servicing LLC*, No. 4:20-CV-01900, 2023 WL 6282829, at *19 (S.D. Tex. Sept. 26, 2023) ("Proof of an actual injury is a liability element of [a plaintiff's] TDCA claims."). "Recoverable damages include those resulting from financial harms or mental anguish." *Searcy v. CitiMortgage, Inc.*, 733 F. App'x 735, 739 (5th Cir. 2018) (affirming summary judgment dismissal of TDCA claim for lack of harm). Moreover, "there must be a causal connection between the improper debt collection practice and the harm suffered." *Id.* (citing *Elston v. Resolution Servs., Inc.*, 950 S.W.2d 180, 185 (Tex. App.—Austin 1997, no writ)).

As of yet, the Woods have presented no evidence of financial harm or mental anguish caused by EWA's wrongful acts. Their sworn declarations merely describe EWA's improper debt collection practices without identifying an actual injury. This does not, however, prevent the Court

---

[2] The FDCPA does not require proof of actual damages to recover statutory damages. *Willis v. Portfolio Recovery Assocs., L.L.C.*, 803 F. App'x 761, 763 (5th Cir. 2020).

9

from granting summary judgment on *part* of the Woods' TDCA claim—specifically, the first four elements. *See* FED. R. CIV. P. 56(a) (permitting summary judgment on "part" of claims or defenses); *Belt v. EmCare, Inc.*, 444 F.3d 403, 406 (5th Cir. 2006) (affirming grant of partial summary judgment in favor of plaintiff on less than an entire claim). Because there is no genuine issue of material fact as to the first four elements of the Woods' TDCA claim, the Court grants partial summary judgment in favor of the Woods as to those elements, leaving the issue of injury to be decided at trial or a later hearing.

### III.  Unreasonable Collection Efforts

Under Texas law, an unreasonable collection efforts claim requires "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *See Water Dynamics, Ltd. v. HSBC Bank USA*, 509 F. App'x 367, 370 (5th Cir. 2013) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008)). Such a claim is an intentional tort whose "elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *EMC Mortg. Corp.*, 252 S.W.3d at 868. "Generally, Texas courts apply this cause of action based on actual collection efforts, such as repeated telephone calls or physically approaching the debtor, that oversteps the bounds of routine collection methods and rise to a level of excessive harassment." *Forbes v. CitiMortgage, Inc.*, 998 F. Supp. 2d 541, 552 (S.D. Tex. 2014) (citing *EMC Mortg. Corp.*, 252 S.W.3d at 864–65). Additionally, the general rule in Texas is that "mental anguish alone is insufficient to sustain a recovery of damages, at common law, for unreasonable collection efforts." *McDonald v. Bennett*, 674 F.2d 1080, 1088 (5th Cir. 1982) (citing *Duty v. General Finance Co.*, 154 Tex. 16, 273 S.W.2d 64 (1954)). Evidence of some physical injury is required. *See id.* at 1089 (finding jury charge

defective on unreasonable collection claim for not requiring a finding that the plaintiff suffered some physical injury that was proximately caused by collection efforts).

The summary judgment evidence in this case establishes as a matter of law that EWA engaged in unreasonable collection efforts against the Woods. EWA intentionally harassed the Woods while trying to collect an illegitimate debt from them. EWA bombarded the Woods with repeated telephone calls, used verbally abusive language, and created a perception that physical harm would occur. EWA's actions were willful, wonton, and malicious and fall squarely within the realm of unreasonable conduct. *See EMC Mortg. Corp.*, 252 S.W.3d at 864–65, 870 (finding evidence of a "large, very intimidating man" who was "yelling and screaming, demanded the keys to the house, and told [the plaintiffs'] family to get out" sufficient to uphold the jury's finding of unreasonable collection efforts). The Court therefore grants the Woods' motion for partial summary judgment on their unreasonable collection efforts claim as to liability, leaving the issue of whether the Woods are entitled to recover damages to be decided at trial or a later hearing.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs Scott Wood and Carley Wood's Motion for Partial Summary Judgment as to Claims Against Edward Wolff & Associates (Dkt. #28) is **GRANTED**. The Court grants partial summary judgment in favor of Plaintiffs as to liability on their FDCPA and unreasonable collection efforts claims and as to all elements, except for injury, on their TDCA claim. The Court leaves the issue of damages to be decided at trial or a later hearing.

**IT IS SO ORDERED.**
**SIGNED** this 8th day of April, 2024.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE